CASE 49—PETITION EQUITY—FEBRUARY 28.

# Persifull v. Hind, &c.

### APPEAL FROM BOONE CIRCUIT COURT.

1. HOMESTEAD.—Where a debtor, having made a contract for the sale of his homestead, removed from it with a view of giving possession under the contract, but before he . had surrendered the control of the place, the purchaser abandoned the contract, and the debtor was prevented from executing his intention to return only by his speedy death after it was ascertained that the sale would not be consummated, there was no abandonment of the homestead; and the widow and children of the debtor having returned before this action was brought to subject the property, the widow is entitled to a homestead.

2. SAME.—The fact that the land was held by the debtor under a title bond does not preclude the widow's right to a homestead. It was not necessary to the existence of this right that the husband should have had a deed to the land.

S. W. TOLIN, J. L. ELLISTON AND P. W. HARDIN FOR APPELLANT.

1. A homestead right attaches where land is held under title bond as in case of an absolute conveyance.    (Griffin v. Proctor's Adm'r, 14 Bush, 571.)

2. Homestead right is not lost by temporary removal. Its existence is determined by actual occupancy at the time it is sought to be subjected. (Wing v. Hayden, 10 Bush, 278; Nicholas v. Scennett, 78 Ky., 632.)

RIDDELL & STEPHENS AND THOMAS H. HINES FOR APPELLEES.

The abandonment of a homestead with the intention of permanently remaining away, destroys the homestead right. A reoccupancy confers no homestead right by reason of the previous occupancy. (Thompson on Homesteads, sec. 267; Carter, Fisher & Co. v. Goodman, 11 Bush, 228;  Brame v. Craig, 12 Bush, 404; Pribble v. Hall, 13 Bush, 62; Little v. Woodward, 14 Bush, 587.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

In 1880 one Roberts sold to James A. Persifull and his son, L. F. Persifull, a tract of land for $3,125,

and executed to them a bond for a title. The grantees were to own it in proportion to what each might pay of the purchase money. The father paid about $1,600, and the son about $812. The former, with his family, lived upon the land from March, 1881, until some time in November, 1884. In the meantime, the son, desiring to remove to another State, entered into a verbal arrangement with his brother, Mark Persifull, by which the latter was to take the former's place under the contract. In September, 1884, the father had not only become involved, but was in the last stage of consumption. He recognized he was about to die, and was desirous of settling up his affairs. He believed if he could sell the place at a fair value, it would bring enough not only to pay the unpaid purchase-money, but that his interest in the surplus of the proceeds would pay his other debts, and leave something for the support of his family after his death. He, therefore, on September 24, 1884, assigned the Roberts title bond to the appellee, Samuel Hind, the two sons uniting in the assignment, and the father and his son, Mark, at the same time entered into an agreement with Hind, and executed to him a power of attorney, by which he was authorized to sell the land, pay their debts, and account to Mark and the wife of James A. Persifull for any surplus arising from the sale in proportion to what the father and son had paid toward the price of the land. This writing recites that the title bond had been assigned to Hind for such purpose, and that it had been done owing to the father being involved and the condition of his health. It is clear Hind accepted the charge or trust upon these terms

and in this way. He testifies that the assignment of the title bond to him was not intended as an absolute transfer to him, and it is manifest, not only from his own evidence, but the other testimony in the record, that he merely became the agent of the Persifulls to make a sale of the. land and pay their debts. The arrangement entered into was not, therefore, irrevocable, as is contended. In November, 1884, Hind contracted the farm to one Long, possession to be given on or before March 1, 1885, and when given one thousand dollars of the purchase-money was to be paid. It was evidently the expectation of all parties that this trade would be carried out, and that the purchaser would want possession some time between the date of the contract and the first of the following March. In view of this fact, and because of coming cold weather and bad roads, which would perhaps render it impossible for J. A. Persifull, who was then a dying man, to remove from the premises, he determined to do so at once, and did so about the middle of November, 1884. His object was to avoid any obstacle to the giving possession to the purchaser whenever he might be ready to make the first payment, and desire possession of the property. This reason for the removal was fully understood by Hind. The father, with his family, save the son, Mark Persifull, moved some four miles from the home place to a rented house. The son-in-law of J. A. Persifull, one Wasson, who had been residing with the father-in-law, and Wasson's family, as well as the son, Mark, remained there, however, as the tenant of J. A. Persifull, and accounted to him for rent for the place. J. A. Persi-

full also left some stock on the farm, all his farming implements, and some household plunder in the house. He died in February, 1885, or about three months after the removal, leaving the appellant, Permelia Persifull, as his widow, and also leaving three infant children. The sale to Long was not carried out, owing to his failure to make the first payment, and had been abandoned prior to Persifull's death. The widow and her children moved back to the home place a few days after his death, and were in full possession there, and housekeeping, when this action was brought by Hind to sell the property and execute what he terms "the trust."

The issue having been properly made, the lower court refused the claim of the widow to a homestead for herself and children in the land, and of this she now complains. The liability of the land first for the unpaid purchase-money is admitted by her, and she only claims a homestead subject to it. The fact that the land was held under a title bond only does not preclude her right if she be otherwise entitled to it. It was not necessary to its existence that the husband should have had a deed to the land. (Griffin v. Proctor's adm'r, 14 Bush, 571.)

It is equally certain that if at the time of his death he had no such right in .the property, then his widow and children have none, as the right is derivative.

The question, therefore, arises whether his removal from the premises, under the circumstances stated, is to be regarded in law as temporary or permanent, so far as his right to a homestead therein is concerned. If he abandoned the premises with no inten-

tion of ever returning, then such an abandonment determined the homestead right. His removal was certainly a contingent one. He only left his home upon the idea that the sale to Long would be carried out, and this record fails to show that he did not intend to return, if it failed of complete execution. It is evident from all the circumstances that the removal was temporary, unless a sale should be effected, and that the deceased, in the event of a failure to sell, would have returned. His health, and the time of year, prevented it, when it was ascertained that the intended sale to Long was a failure, and his speedy death cut short his opportunity to do so. He retained possession of the property until his death, and upon the entire record we can not presume otherwise than that he intended to return to his home, save in the event of its sale. This being so, he, at the time of his death, had not lost his right to a homestead in his interest in the place, the whole of it being of course subject to the unpaid purchase money, and upon his death this right survived to the widow and his infant children, who were in possession when this action was instituted.

The judgment is reversed, and cause remanded for further proceedings consistent with this opinion.